Jones, J.
Section 35, Article II of the Ohio Constitution adopted September 3,1912, contains a provision that for the purpose of providing compensation to workmen for injuries occasioned in the course of their employment laws should be passed establishing a state fund to be created by compulsory contribution thereto by employers, which fund should be administered by the state; and that any or all rights of action or defenses might be taken away from employes and employers, but that no right of action should be taken away from any employe when the injury arose “from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.”
In conformity with this provision of the constitution the legislature passed what is now known as the Workmen’s Compensation Law. Complying with the constitutional provision quoted it passed Section. 1465-76, General Code (103 O. L., 84, amended 104 O. L., 194), which was in force at the time this accident occurred. Briefly stated this section provides that where a personal injury is suffered by an employe while in the course of his employment, and his employer has paid into the state insurance fund the premium provided for in the act, or is authorized directly to compensate such employe in compliance with the Workmen’s Compensa *6 tion, Law, and in case such injury arises “from the wilful act of such employer or any of such employer’s officers or agents, or from the failure of such employer or any of such employer’s officers or agents to comply ivith cmy lawful requirement for the protection of the lives and safety of employees,” then, in such event, the civil liability of such employer shall not be affected, hut the injured employe may, at his option either claim compensation from the state fund or institute proceedings for damages on account of his injuries. It also provides that such employer shall not be liable for any injury to any employe except as provided in that section.
It is conceded by the record that the defendant in error had complied with all the provisions of the so-called Workmen’s C.ompensation Law. Under the section named the employer, therefore, obtained immunity from suit against it for personal injuries suffered by its employe in the course of his employment, unless the injury was occasioned by the employer’s failure to observe a lawful requirement within the meaning of the provisions of the constitution and the law enacted in pursuance thereto.
In this case Patten, the employe, claims that the employer did not comply with a lawful requirement, as provided in Section 1465-76, General Code, because it failed to observe the provisions of Section 12593, General Code. That section reads as follows: “Whoever, employing or directing another to do or perform labor in. erecting, repairing, altering or painting a house, building or other structure, knowingly or negligently furnishes, erects or causes to be furnished for erection for and in the performance of said labor unsuitable or improper seaf - *7 folding, hoists, stays, ladders or other mechanical ■ contrivances which will not give proper protection to the life and limb of a person so employed'or engaged, shall be fined not more than five hundred dollars or imprisoned not more than three months; or both. ’ ’
It will appear from the allegations of the petition that the gravamen of the defendant’s negligence was in furnishing “unsuitable and improper scaffolding” which did not give proper ■ protection to life and limb; in providing and furnishing a plank which was worn and defective and wholly improper and unsuitable for the purpose for which it was to be used; and in failing adequately and properly to secure, support and brace said scaffolding so that the same would give proper protection to the life and limb of the plaintiff while using it.
We are, therefore, faced at the ouset with the duty of determining whether the statute quoted is a “lawful requirement.” It must be considered in this connection, that if plaintiff in error’s claim is sound, Section 12593, General Code, not only imposes a civil liability upon an employer who has fully complied with the workmen’s compensation law, but also imposes a penalty for failing to observe its provisions. And whether considered from its civil or criminal side, the law undoubtedly would impose, in either case, a drastic liability upon the employer. If considered from a civil angle, it means that although an employer has fully complied with the Workmen’s Compensation Law and paid his premiums into the state fund he may still be liable for damages at the option of the employe; if considered from the criminal angle, that if the statute *8 quoted is such as contended for by counsel for plaintiff in error the employer is subject to a fine of not more than $500 or imprisonment for not more than three months, or both.
The arguments of counsel amount- to this. It is., urged by counsel for the defendant in error that the words of the statute imposing both civil and criminal liability are general, vague and indefinite, that to constitute a “lawful requirement” they should be sufficiently specific to advise the. employer of his exact. duty; and, on the other hand, counsel for plaintiff in error argue that while the language is general in terms it is sufficiently comprehensive to constitute “a lawful requirement” within the mean-; ing of Section 1465-76, General Code.
We are entirely unable to agree with the view of the plaintiff in error. Its application in cases of this character would produce great uncertainty and create doubtful results. How would the defendant in error be able to ascertain the exact requirement made of him as an employer in order to escape civil and criminal liability? Manifestly, it would be impossible for him to ascertain the extent of his duty, until after a jury, by its verdict, had determined that the employer had failed to provide a suitable scaffolding. What would be an “unsuitable or improper” scaffolding? The employer might endeavor honestly to conform to the provisions of the statute relating to suitableness, only to find later that a jury declared otherwise and that he had not performed his duty in that regard. Even different juries in similar cases, and upon the same facts, might not agree in their conclusion as to what would be suitable. No criterion of specific conduct is ex *9 acted by the law. No definite requirement is made. It prescribes merely a general course of conduct on the part of the employer in requiring him not to furnish scaffolding that is unsuitable and improper, and which will not give proper protection to the life and limb of the employe.
Let us take this case as a concrete example. The petition alleges that this scaffolding was approximately sixteen feet in height. Would a scaffold of that height be rendered unsuitable if it were not provided with a safety rail for the protection of the workmen? A jury might so find. On the other hand, assuming that this scaffold was two or three feet above the floor, would the same requirement of protection be required on the part of the employer? Yet under the construction of this section, as contended for by plaintiff in error, both instances might be submitted to a jury in order to determine whether or not the defendant had complied with a “lawful requirement” for the safety of his employes. It is impossible to construe the term “lawful requirement,” used in Section 1465-76, General Code, other than as a specific, definite requirement, or a standard of conduct which would advise the employer specifically of his legal obligations. Specific requirements for the safety of employes are elsewhere made in our Code, and doubtless will be made in the future as occasion requires. Originally the scaffolding act comprised both Section 12593 and Section 12594, General Code. The latter now reads as follows:
“Sec. 12594. If such scaffolding or staging as described in the next preceding section, swung or suspended from an overhead support or supports, *10 is more tlian twenty feet from the ground floor it shall not be deemed to give proper protection to the life and limb of persons employed or engaged thereon unless, when in use, it has a safety-rail rising at least thirty-four inches above the floor or main portion extending along the outside thereof, and properly attached thereto, and is provided with braces strong enough to sustain the weight of a man’s body against it and to prevent such scaffolding or staging from swaying from the building or structure. ’ ’
The legislature has employed in this section specific methods or requirements, which, if followed, will relieve the employer from liability where the scaffolding is fastened from overhead supports and is more than twenty feet from the ground floor. Here a standard of conduct has been pointed out and the employer definitely advised wrhat the law requires to be done, else “it shall not be deemed to give proper protection to the life and limb.” There would be no necessity of passing this section relating to suspended scaffolding if reliance could be had upon the general and broad terms of the preceding section imposing upon the defendant a general course of conduct recognizable at common law. Furthermore, if the argument of counsel for plaintiff below be sound, it must be conceded that the legislature could destroy the usefulness of the Workmen’s Compensation Law by enacting a blanket section providing that employers must furnish suitable and safe places, or suitable and safe mechanical devices, in the operation of the various industries. It may not. be amiss to say here that the legislature confronted with a similar danger *11 amended Section -1465-76, General Code (104 O. L., 194), by specifically defining the term “wilful act,” found in that section of tbe Code. Before this amendment it was found that suits were being brought upon allegations of wilful conduct or for such gross negligence as amounted to wilful conduct. ' So concerned was the legislature by reason of the insidious attack thus made in weakening the structure of the Workmen’s Compensation Law that in Febi'uary, 1914, it defined the term “wilful act,” employed in Section 1465-76, General Code, as one meaning “an act done knowingly and purposely with the direct object of injuring another.”
Notwithstanding this legislative check upon this assault upon the Workmen’s Compensation Law a smoke screen is being laid behind which another assault is now made, which is more insidious than the former, and more calculated to break down the entire Workmen’s Compensation Law. Counsel who make the attack upon the law practically concede this in their briefs. In their argument, under a topical heading, they ask: “Is there any ‘lawful requirement’ left upon the statute books of Ohio?” They answer: “There are very few such.statutes in Ohio.” Thereupon they cite-various sections of -the' Ohio code which would hamstring the Workmen’s Compensation Law, and leave only the bare skeleton for its operation.
The first attack was made in the Schorling case, supra. That attack was repulsed by a decision of this court. Of that decision the Ohio State Federation of Labor says in its brief: ‘ ‘ The wage earners of the state accepted with satisfaction the decision in the case of American Woodenware Co. v. Schorling. ”
*12 So important is the principle involved in this case, and so momentous its effects npon the Workmen’s Compensation Law of Ohio, this court deemed it wise not only to grant a rehearing to the parties interested,. but permitted others to file briefs, pro and con, as friends of the court. The attorney general filed his brief on behalf of the state. The Ohio Manufacturers Association filed its brief on behalf of the Ohio employers, and the Ohio State Federation of Labor filed its brief on behalf of the wage-earning members of that association. Each of these filing a brief as amicus curiae, joined in asking this court to so construe the term “lawful requirement” as not to “menace the integrity of the Workmen’s Compensation Law.”
The attorney general, though conceding that the state itself is not a party, agrees that the question in this case “is of such importance and its decision will have such a vital effect upon the Ohio Workmen’s Compensation Act” that the filing of a brief by the state seemed imperative.
The Ohio Manufacturers Association concedes the great importance of the question involved, and agrees, in principle, with the legal views expressed by the Federation of Labor. Opening its argument in favor of the defendant in error the Ohio State Federation of Labor, through its counsel, says that if “The so-called ‘open liability’ * * * is to be widened to such an extent as to be tantamount to a return to the old order, in any considerable degree, it were far better to surrender and abandon it altogether.” It concedes that industry is unable to carry the double burden resulting from the two systems of compensation, and argues that “to force the *13 employer to become an insurer for his employes and at the same time deny him immunity from civil liability for negligence is to take his property without due process of law and deny him the equal protection of the laws.” It insists that safety requirements “should be such as to reasonably advise the employer in advance as to the steps he must take and the methods he must pursue.” Finally, the Ohio State Federation of Labor in its brief says: ‘ ‘ The wage earners recognize that justice to the employers requires that ‘lawful requirements’ should be reasonably specific, and are apprehensive that to hold statutes to be such which simply enjoin care and caution in general terms would result in such a flood of litigation in the courts as that the old order, in a very considerable measure, would be restored. They deplore the possibility of such backward step.”
The interests of the Ohio Manufacturers Association and the Ohio State Federation of Labor do not always run in the same channel. Here their views coincide. We have reverted to these briefs not only as supporting the principle we announce in this case, but to show that, from a practical standpoint, their views coincide with our own, that any other construction would emasculate the present Workmen’s Compensation Law.
It is submitted that if a petition in an ordinary' action should merely allege that a defendant had negligently erected unsuitable or improper scaffolding, the court would require the plaintiff to state specifically wherein such scaffolding was unsuitable or improper. This statute Is a penal statute. If a jury found that a civil liability arose from its-viola, *14 lion, the same or another jury might determine from the same evidence that the defendant had criminally violated the section, the only difference being that the criminal violation must be found beyond a reasonable doubt. Considering the statute from its penal side, can it be argued that its terms are sufficiently definite and certain to advise the defendant whether he has committed a criminal act? Does its criminality not depend upon the jury’s view whether such scaffolding would be unsuitable or improper?
The court of appeals reversed the instant case and entered final judgment for the defendant in error upon the authority of American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305. There is no distinction in principle between this case and the Schorling case. In the latter, Sections 15 and 16 of the Industrial Commission Act were under consideration, and the allegations of the petition were predicated upon the failure to observe a “lawful requirement” as named in those sections. Briefly stated, the petition alleged that the defendant failed to provide a safe place to work. This court, confining itself to these two sections of the Industrial Commission Act, and to the case made in the petition, stated in proposition 2 of its syllabus: “The provisions of Sections 15 and 16 are not the lawful requirements referred to by, and within the meaning of, Section' 35, Article II of the Constitution.” The court held that these sections of the statute could be redeemed within the scheme of the Industrial Commission Act by imposing upon employers the obligation to obey “particular orders and requirements” made by the Industrial Commi's *15 sion. However, that feature of the case was not drawn into question by the allegations of the petition, since the petition was founded wholly upon the fact that the employer had not complied with the lawful requirement by reason of his failure to furnish a safe place to work. These sections, as does the scaffolding section in controversy, employed general terms and not specific requirements. In the third proposition of the syllabus of the Schorling case this court held: “The term ‘lawful requirement,’ as used in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act (103 O. L., 84), does not include a general course of conduct, or those general duties and obligations of care and caution which rest upon employers and employes, and all other members of the community, for the protection of life, health and safety.”
Even orders of the commission, if made in the broad and general terms of the statute, might be ineffectual, but, as stated in the opinion in that case (page 321), if the order required “certain specific precautions to be taken and safeguards to be provided,” it would be held to be a “lawful requirement” within the meaning of Section 1465-76, General Code.
When the court of appeals certified the case upon a finding that its judgment was in conflict with the judgment of another court of appeals, it became the duty of that court to render judgment and incorporate it in its entry. Because of the reversal by the court of appeals plaintiff in error in that court was entitled to an entry of judgment. Further *16 more, it is only the “judgments” of the court of appeals that this court is entitled to review. Crawford v. Weidemeyer, 93 Ohio St., 461.
Proceeding, therefore, to render the judgment the court of appeals should have rendered, this court renders judgment in favor of the defendant in error, who was plaintiff in error in the court of appeals.

Judgment for defendant in error.

Hough, Robinson and Matthias, JJ., concur.
Marshall, C. J., concurs in the judgment.